IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2019 Session

## MARLON COOPER v. CITY OF MEMPHIS CIVIL SERVICE COMMISSION

**Appeal from the Chancery Court for Shelby County**
**No. CH-17-0507     Walter L. Evans, Chancellor**

_____

### No. W2018-01112-COA-R3-CV

_____

A lieutenant with the Memphis Fire Department was terminated after a positive drug test. Although this termination was upheld by the Civil Service Commission, the Shelby County Chancery Court later reversed the termination and ordered that the lieutenant be reinstated to his previous employment. For the reasons stated herein, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

Bruce McMullen, City Attorney; and, Sharon L. Petty, Senior Assistant City Attorney, for the appellee, the City of Memphis.

Kathy Laughter Laizure, Memphis, Tennessee, for the appellee, Marlon Cooper.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Marlon Cooper, a former lieutenant with the Memphis Fire Department, first tested positive for marijuana in 2008. At that time, Mr. Cooper was not terminated from his employment, but instead, was suspended for 360 hours and thereafter entered into an employee assistance program ("the EAP program"). According to Daryl Payton, the Fire Department's Deputy Chief of Administration, the EAP program is not always provided as an option to first-time offenders. Indeed, as a workplace safety and compliance manager with the City of Memphis would later testify in this matter, "there's no guarantee of a second chance."

Although Mr. Cooper was given a second chance on this occasion, the City of Memphis made clear that illegal drug use was not permitted by its personnel, noting as follows in its 2008 suspension letter to Mr. Cooper:

> Please know that the Fire Division will not tolerate its employees being under the influence of intoxicants or illegal drugs while on-duty or off-duty. Your behavior has jeopardized the lives and safety of your fellow employees and citizens of Memphis, including yourself. The quality of emergency services rendered by this department to the Memphis community has been extremely compromised by your actions. **Any further violations of this nature may result in your termination from the Division of Fire Services**.

(emphasis in original).

Despite this warning, Mr. Cooper tested positive for marijuana again on January 15, 2016 following a random drug screen while on duty. Shortly thereafter, in a document labeled "Notification of Administrative Investigation and Hearing," Mr. Cooper was informed of possible violations of the Division of Fire Services Operations Manual and/or City of Memphis Personnel Manual. This document indicated the January 15 drug test was Mr. Cooper's second positive drug screen and stated that a hearing would be held on January 25, 2016. Mr. Cooper was specifically informed that he was entitled to union representation, and the notification document concluded by emphasizing as follows: "The results of this investigation and hearing could lead to disciplinary action being taken against you, up to and including termination."

Mr. Cooper ultimately never challenged the results of the drug screening,[1] and throughout the subsequent disciplinary process, he never asked for union representation. As he would later explain, "I didn't even have union representation at the hearing because I wanted to face up to what I had done." It was Mr. Cooper's expectation that he would receive an unpaid suspension and be referred to the EAP program again, but that did not occur. According to a City official, the City administration had become more restrictive in terms of who qualified for participation in the EAP program:

> There is nowhere in the policy where it says you're going to get a second chance. There is reference to an opportunity to go through EAP, if eligible.
>
> So I know that with Mr. Wharton, not to say that previous administrations did not take it seriously, but just in the interest of safety, the

---

[1] As prior counsel for Mr. Cooper would later state during the civil service proceedings that ensued, "Marlon Cooper admitted that he tested positive -- or admitted he used marijuana. He admitted that."

position was that we did not want to give third and fourth and fifth chances when we're talking about drugs, because this is a very serious situation and our safety sensitive employees are doing very serious work.

So the thought was, after you've had a second chance, the City has given you a second chance, that will be the last chance. And that started with the Wharton administration.

Following his scheduled administrative hearing, Mr. Cooper was terminated by letter dated January 25, 2016.

Mr. Cooper appealed his termination to the Civil Service Commission, and after the matter was assigned to Commissioner Blake Bourland to serve as a hearing officer, a hearing was held on August 17, 2016. Mr. Bourland subsequently issued a decision sustaining Mr. Cooper's termination, and Mr. Cooper thereafter appealed to the full panel of the Civil Service Commission. Upon reviewing the record de novo, including the transcript from the August 17, 2016 hearing, the full Commission also held that Mr. Cooper's termination should be sustained.

Faced with an adverse outcome from the civil service proceedings, Mr. Cooper filed for review[2] in the Shelby County Chancery Court, requesting that his termination be reversed and seeking reinstatement as a firefighter. In its "Findings of Fact and Conclusions of Law and Final Judgment," the Chancery Court held in Mr. Cooper's favor, finding that his constitutional due process rights had been violated, that the Civil Service Commission's decision was unsupported by substantial and material evidence, and that the Commission's decision was arbitrary and capricious. Despite holding that Mr. Cooper should be reinstated and returned to work upon approval of the EAP program, the Chancery Court did deny him back pay and attorney's fees. Now that the case is before this Court on appeal, both the City and Mr. Cooper raise issues for our review.

---

[2] The initiating pleading was improperly styled as a "Petition for Writ of Certiorari." As we explained in a prior opinion:

[I]n 1988, the General Assembly amended the language of section 27-9-114 to read, in pertinent part, "Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under Tennessee Code Annotated, Section 4-5-322, of the [UAPA]." 1998 Tenn. Pub. Acts, ch. 1001. Thus, the legislature deleted the provision requiring common law writ of certiorari review and replaced it with the current provision providing for judicial review under the UAPA.

*Davis v. Shelby Cty. Sheriff's Dep't*, 278 S.W.3d 256, 262 (Tenn. 2009).

**ISSUES PRESENTED**

Seeking a reversal of the Chancery Court's decision to reinstate Mr. Cooper, the City raises the following issues in its appellate brief:

1. Whether the Chancery Court erred in finding the Commission's decision upholding the termination was in violation of constitutional provisions.
2. Whether the Chancery Court erred in finding that the Commission's decision was unsupported by substantial and material evidence.
3. Whether the Chancery Court erred in finding the Commission's decision was arbitrary and capricious.
4. Whether the Chancery Court improperly substituted its own judgment for that of the Commission rather than conducting its review in accordance with the standards set forth in Tennessee Code Annotated section 4-5-322(h).

For his part, Mr. Cooper raises the following issue on appeal:

1. Whether the Chancery Court erred in failing to award back pay and attorney's fees upon ordering reinstatement.

**STANDARD OF REVIEW**

In his Chancery Court lawsuit, Mr. Cooper challenged the Civil Service Commission's decision to sustain his termination from employment. Thus, the framework for review in this case is tied to the provisions of the Uniform Administrative Procedures Act, specifically Tennessee Code Annotated section 4-5-322(h). *See* Tenn. Code Ann. § 27-9-114(b)(1) ("Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322."). In relevant part, the controlling authority provides as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h). "The scope of review in this Court is the same as in the trial court." *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999).

## DISCUSSION

We first address the constitutional issue involved in this case. In its final order, the Chancery Court found that Mr. Cooper's due process rights were violated incident to his termination because there was, according to the court, a change in policy without accompanying fair notice to him. Specifically, the Chancery Court held that Mr. Cooper's due process rights were violated when he was not given notice that a second substance abuse violation would preclude re-entry into the EAP program. Although Mr. Cooper maintains on appeal that his due process rights were in fact violated as held by the Chancery Court, the City urges this Court to reverse the Chancery Court with respect to this issue. We agree with the City's position.

The substance abuse policy itself did not change inasmuch as there was not previously a guarantee of even a second chance through the EAP program. Referral to the EAP program was, and is, conditioned on a determination that the employee is "[e]ligible." The City's substance abuse policy makes clear that testing positive for controlled substances can result in termination. Indeed, PM-78-03 provides as follows:

> Being under the influence, use, consumption, possession, distribution or sale of controlled substances, and/or alcohol (except for the proper use of controlled substances for which the employee holds a valid prescription) while at the workplace or on City property, either on or off the employee's regular duty hours, is absolutely prohibited. This includes the operation of vehicles in the performance of job duties regardless of the location.

> Any employee under the influence of, using, selling, transferring, illegally possessing, or testing positive for controlled substances and/or alcohol under the circumstances and locations described above shall be immediately removed from duty and shall be subject to disciplinary action up to and including termination following investigation by management and after the employee has had an opportunity to answer such charges. Additionally, an employee who is injured on duty and tests positive for controlled substances/alcohol, or is otherwise found to be under the influence of controlled substances/alcohol, or is otherwise found to be under the influence of controlled substances/alcohol (except for the proper

- 5 -

use of prescribed drugs) forfeits On-The-Job injury benefits. Eligible employees shall be referred to the Employee Assistance Program for counseling and rehabilitative services, but such referral will not substitute for the established disciplinary process.

The fact that the City decided that Mr. Cooper, as a second offender, was ineligible for the EAP program does not mean that Mr. Cooper's due process rights were violated. The essential hallmarks of what due process requires are notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). As this Court has elaborated:

> The most fundamental element of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). "[N]otice and opportunity for [a] hearing appropriate to the nature of the case" must precede the "deprivation of life, liberty or property." *Loudermill,* 470 U.S. at 541, 105 S.Ct. 1487 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

*Case v. Shelby Cty. Civil Serv. Merit Bd.*, 98 S.W.3d 167, 172 (Tenn. Ct. App. 2002).

Here, there is no question that Mr. Cooper was given several warnings by the City regarding discipline under the substance abuse policy. As an initial matter, Mr. Cooper was warned incident to being afforded a second chance by the City in 2008. With regard to the specific conduct at issue herein, Mr. Cooper was explicitly warned following the January 2016 drug screen that his termination could ensue depending on the outcome of the City's investigation. He was clearly given notice of the charges against him, and he was provided with a fair opportunity to respond. We therefore respectfully disagree with the Chancery Court that a due process violation is implicated in this case.

We turn next to whether a proper foundation existed for the Civil Service Commission to sustain Mr. Cooper's termination. As we discussed in a prior opinion:

> Section 246 of the City of Memphis Charter . . . provides that the City may terminate an employee for "just cause," and provides that "[j]ust cause shall exist when the employer had a reasonable basis for the action taken." Section 248 of the Charter provides that on appeal to the Commission, "[t]he burden of proof required to sustain the action of the City shall be by a preponderance of the evidence. If, after a presentation of the proof, the hearing officer finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained."

*Holmes v. City of Memphis Civil Serv. Comm'n*, No. W2016-00590-COA-R3-CV, 2017 WL 129113, at *9 (Tenn. Ct. App. Jan. 13, 2017). Here, there does not appear to be any legitimate dispute that termination is a valid disciplinary action stemming from a violation of the City's substance abuse policy.[3] With that in mind, and given the fact that multiple charges against Mr. Cooper were readily established in this case, we are of the opinion that substantial and material evidence existed to support the Commission's decision to uphold Mr. Cooper's termination. The record clearly supports, for instance, Mr. Cooper's violation of PM-78-03 and PM-74-03 from the policies and procedures in the City's personnel manual. Under those provisions, testing positive for drugs constitutes a violation. Indeed, as previously noted, PM-78-03 provides in pertinent part that "[a]ny employee . . . testing positive for controlled substances . . . shall be immediately removed from duty and shall be subject to disciplinary action up to and including termination." Under PM-74-03, "[i]f any drug/alcohol test has a positive result . . . the employee shall be relieved of duty subject to disciplinary action up to and including termination." PM-74-03 further provides that "testing positive shall constitute gross insubordination which will subject the employee to forfeiture of On-the-Job injury benefits and to discipline up to and including termination." The evidence before the Commission showed that Mr. Cooper tested positive for marijuana, and he chose not to challenge the results of that test.[4]

Moreover, the record clearly supports that Mr. Cooper violated Section 103.01(11)(j) and Section 103.01(11)(p) of the Rules and Regulations in the Division of Fire Services' Operations Manual. Section 103.01(11)(j) provides that the "[u]se or possession of illegal drugs or narcotics" is a major violation and Section 103.01(11)(p) provides that "[r]epeated violations" are a major violation. Given the evidence pertaining to his positive drug test in 2016 and prior offense from 2008, violations of both of these provisions in Section 103.01(11) were plainly established.

There being substantial and material evidence to support the Commission's determination, we now turn to the Chancery Court's specific conclusion that Mr. Cooper's termination was "arbitrary and capricious." A decision is arbitrary and capricious when it is one that "is not based on any course of reasoning or exercise of judgment" or one that "disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993). According to the Chancery Court, terminating Mr. Cooper was arbitrary and capricious "because five other firefighters had violated the City's substance abuse policies and were not terminated." We respectfully disagree with the conclusion that

---

[3] We note that in its final order, even the Chancery Court stated that the City would be "entitled" to terminate Mr. Cooper based on a violation of its policy.

[4] Although the Chancery Court attempted to characterize Mr. Cooper's violation as occurring "while he was off duty," the record before the Commission indicated that he tested positive for marijuana during a random drug screen while he was at work.

terminating Mr. Cooper was an arbitrary action. Mr. Cooper's 2016 positive drug screen at work was a second offense, and we cannot say that the decision to terminate him was not based on any course of reasoning or exercise of judgment. As for the firefighters to whom the Chancery Court compared Mr. Cooper, evidence showed that four of these firefighters were involved in *off-duty* alcohol incidents. The fifth alleged comparable was involved in an on-duty alcohol incident, but his offense was committed before the City began to determine that second offenders were no longer eligible for the EAP program. According to proof before the Commission, no employee in the Fire Division has been allowed a third chance for on-duty positive drug or alcohol tests since 2012.

Although the Chancery Court found that the distinction made by the City between off-duty and on-duty conduct was unsupported and held that the violations of the alleged comparable firefighters *and* Mr. Cooper should be considered to be off-duty offenses, this conclusion was in error. Mr. Cooper clearly tested positive for marijuana while at work; his violation was properly characterized by the City as "on-duty." Moreover, whereas alcohol is a legal drug, Mr. Cooper's conduct specifically implicated Section 103.01(11)(j), which prohibits use of illegal drugs.

We, therefore, conclude that Mr. Cooper was afforded due process and that substantial and material evidence existed to support the Commission's action. Further, we hold that Mr. Cooper's termination was neither arbitrary nor capricious. Having reached these conclusions, it follows that the Chancery Court's reversal of Mr. Cooper's termination was in error, and the case is hereby remanded for the entry of an order reinstating the decision of the Commission. Our disposition of these matters pretermits the appellate issues raised by Mr. Cooper regarding his request for back pay and attorney's fees.

## CONCLUSION

The judgment of the Chancery Court is reversed, and the case is remanded to the Chancery Court with instructions to enter an order reinstating the decision of the Memphis Civil Service Commission affirming Mr. Cooper's termination of employment.

_____
ARNOLD B. GOLDIN, JUDGE